## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JAMES MICHAEL LAWRENCE**                    **CIVIL ACTION**

**VERSUS**                                    **NO. 19-13300**

**W.S. SANDY McCAIN**                         **SECTION: "I"(1)**

## REPORT AND RECOMMENDATION

Petitioner, James Michael Lawrence, a Louisiana state prisoner, filed the instant federal application seeking habeas corpus relief pursuant to 28 U.S.C. § 2254. For the following reasons, it is recommended that the application be **DISMISSED WITH PREJUDICE**.

On June 12, 2014, petitioner was convicted of attempted simple burglary under Louisiana law.[1] On July 17, 2014, he was found to be a fourth or subsequent offender and was sentenced as such to a term of twenty years' imprisonment.[2] On March 6, 2015, the Louisiana First Circuit Court of Appeal affirmed his conviction and sentence.[3] The Louisiana Supreme Court then denied his related writ application on April 24, 2017.[4]

On February 14, 2018, petitioner filed a state post-conviction application.[5] After relief was denied by the state district court,[6] his related writ applications were then likewise denied by the Louisiana First Circuit Court of Appeal[7] and the Louisiana Supreme Court.[8]

---

[1] State Rec., Vol. 2 of 6, trial transcript; State Rec., Vol. 1 of 6, minute entry dated June 12, 2014; State Rec., Vol. 1 of 6, jury verdict form.

[2] State Rec., Vol. 2 of 6, transcript of July 17, 2014.

[3] State v. Lawrence, No. 2014 KA 1448, 2015 WL 996869 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 4 of 6.

[4] State ex rel. Lawrence v. State, 220 So. 3d 739 (La. 2017); State Rec., Vol. 4 of 6.

[5] State Rec., Vol. 5 of 6.

[6] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief.

[7] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.

[8] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

On October 23, 2019, petitioner filed the instant federal application seeking habeas corpus relief.[9] The state filed a response.[10] In that response, the state conceded that the federal application was timely and did not argue that the claims contained therein were either unexhausted or procedurally barred; however, the state argued that the claims had no merit. Petitioner filed a reply to the state's response.[11]

## I. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002); accord Langley v. Prince, 926 F.3d 145, 155 (5th Cir. 2019) (noting that the AEDPA imposes a "relitigation bar" on claims adjudicated on the merits by the state court), cert. denied, No. 19-6413, 2020 WL 1906607 (U.S. Apr. 20, 2020). The applicable standards of review are now as follows.

On questions of fact, a state court's factual findings are presumed to be correct and a federal court must give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); see also 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The

---

[9] Rec. Doc. 3.
[10] Rec. Doc. 9.
[11] Rec. Doc. 11.

applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

On questions of law and mixed questions of law and fact, a federal court must defer to a state court's decision on the merits of a claim unless that decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  Courts have held that the "'contrary to' and 'unreasonable application' clauses [of § 2254(d)(1)] have independent meaning." Bell, 535 U.S. at 694.

Regarding the "contrary to" clause, the United States Fifth Circuit Court of Appeals has explained:

> A state court decision is contrary to clearly established precedent if the state court applies a rule that contradicts the governing law set forth in the [United States] Supreme Court's cases.  A state-court decision will also be contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent.

Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (footnotes, internal quotation marks, ellipses, and brackets omitted).

Regarding the "unreasonable application" clause, the United States Supreme Court has held:  "[A] state-court decision is an unreasonable application of our clearly established precedent if it correctly identifies the governing legal rule but applies that rule unreasonably to the facts of a particular prisoner's case." White v. Woodall, 572 U.S. 415, 426 (2014).  However, a federal habeas court must be mindful that "an unreasonable application is different from an incorrect one." Bell, 535 U.S. at 694; accord Harrington v. Richter, 562 U.S. 86, 102-03 (2011) ("Section 2254(d)

reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." (quotation marks omitted)); Langley, 926 F.3d at 156 ("The Supreme Court has repeatedly held that it is not enough to show the state court was wrong."); Puckett v. Epps, 641 F.3d 657, 663 (5th Cir. 2011) ("Importantly, 'unreasonable' is not the same as 'erroneous' or 'incorrect'; an incorrect application of the law by a state court will nonetheless be affirmed if it is not simultaneously unreasonable."). Therefore:

> "[T]he [AEDPA's] relitigation bar forecloses relief unless the prisoner can show the state court was *so* wrong that the error was well understood and comprehended in existing law beyond any possibility for fairminded disagreement. In other words, the unreasonable-application exception asks whether it is beyond the realm of possibility that a fairminded jurist could agree with the state court.

Langley, 926 F.3d at 156 (citations and quotation marks omitted). "Under AEDPA's relitigation bar, the very existence of reasonable disagreement forecloses relief." Id. at 170.

> Further, the Supreme Court has expressly cautioned:

> Section 2254(d)(1) provides a remedy for instances in which a state court unreasonably applies this Court's precedent; it does not require state courts to extend that precedent or license federal courts to treat the failure to do so as error. Thus, if a habeas court must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not clearly established at the time of the state-court decision. AEDPA's carefully constructed framework would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law.

Woodall, 572 U.S. at 426 (citations and quotation marks omitted). Therefore, when the Supreme Court's "cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126 (2008) (quotation marks and brackets omitted).

In summary, "AEDPA prevents defendants – *and federal courts* – from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Renico v. Lett, 559 U.S. 766, 779 (2010) (emphasis added). The Supreme Court has expressly warned that although "some federal judges find [28 U.S.C. § 2254(d)] too confining," it is nevertheless clear that "all federal judges must obey" the law and apply the strictly deferential standards of review mandated therein. Woodall, 572 U.S. at 417.

## II. Facts

On direct appeal, the Louisiana First Circuit Court of Appeal summarized the facts of this case and the evidence at trial as follows:

> On October 20, 2013, during the early morning hours, Deputy Scott Seals of the St. Tammany Parish Sheriff's Office was dispatched to the Folsom residence of David Cardwell, who, along with his wife, had called 911 and reported a burglary in progress. Deputy Seals proceeded to the residence where he observed a white truck and two white males later identified as the defendant and Justin R. Lee. Based on the 911 calls, the testimony of Mr. Cardwell, and photographs taken of the scene, several items, including a refrigerator, a computer, two Sony high-definition cameras, an aluminum case of equipment, and a gas can, were taken from an office building and shed detached from and adjacent to the Cardwell residence.
> ….
> Mr. Cardwell testified that at approximately 1:30 a.m., Mrs. Cardwell awakened him after she heard a noise.[FN 2] As Mr. Cardwell proceeded downstairs, he heard loud banging and "hollering" at their front door. Mr. Cardwell denied hearing anyone ask to purchase gas. Mr. Cardwell did not open the door since he did not know who was outside, went back upstairs, and called 911.
>
> [FN 2] Mrs. Cardwell did not testify at the trial.
>
> Mr. Cardwell testified that while talking to the 911 operator he looked out of the upstairs bedroom window and saw a pickup truck in his driveway. He also noticed that the door to his office, which had been converted from a detached garage, was open, though it was usually closed. Mr. Cardwell observed an individual walk out of the office carrying a dorm-sized refrigerator, which the individual put in the bed of the pickup truck. He then observed a second individual carry a computer (an I-Mac All-in-One Monitor/Computer) out of the office and

place it in the bed of the pickup truck, while the first individual ran back to the office.

Mr. Cardwell confirmed that he did not know the perpetrators or give them permission to enter his property or remove his items. During the trial, Mr. Cardwell positively identified the items that were removed from his office when showed photographs depicting the items in the bed of the pickup truck, including a refrigerator, a computer, two Sony high-definition cameras, and an aluminum case of equipment. He further positively identified a photograph of a gas can as being the one that he kept in a storage shed located next to his office. Mr. Caldwell also confirmed the monetary value of the individual items.

The recording of Mr. Cardwell's 911 call was introduced into evidence and played for the jury. During the call, Mr. Cardwell reported that someone entered his detached office. When the dispatcher asked how many individuals were on his property, he indicated he was uncertain, but believed that there was one individual. However, he subsequently used the word "they" in reporting his observations of items being removed and placed in the back of the white pickup truck.

Deputy Seals testified that he was on patrol and passed the Cardwell residence just before the dispatch, noticing the white, four-wheel-drive truck in the driveway. After being notified that a burglary-in-progress had been reported, Deputy Seals traveled approximately one mile back to the residence, looking for two white males in a white truck. He pulled into the Cardwells' driveway, where he observed an F-150 truck. The defendant was pouring gas in the gas tank, and Lee was in the driver's seat. Deputy Seals immediately detained the defendant and Lee. On cross-examination, Deputy Seals confirmed that he smelled alcohol on the defendant and Lee.

Deputy Seals testified that Mr. Cardwell stated he had seen two white males removing items from his office and placing them in the back of the white truck. The defendant and Lee were then arrested and charged. Deputy Seals identified the photographs showing the items identified by Mr. Cardwell in the truck bed.

As the sole defense witness, the defendant testified that he and Lee had been drinking on the night in question. The defendant explained that he and Lee were traveling from Franklinton, where they had attended the fair, to Folsom. The defendant testified that he had warned Lee that they needed gas, that the gas stations in Franklinton had long lines, and that "Folsom would close early." According to the defendant, when the low gas light came on, they stopped at a few houses trying to find someone to provide them with gasoline, but were unsuccessful.

The defendant testified that they arrived at the Cardwells' residence and he beat on the door, hoping to ask the occupants for gas. No one answered the door, but he heard some "stirring around." As he walked back toward the truck, he saw Lee carrying a mini-fridge and what he thought was a television. The defendant testified that he panicked, grabbed a gas can, and proceeded back to the truck. The defendant indicated that he and Lee argued as Lee went back for other items. The defendant admitted to taking the gas can and putting it in the back of the truck, but

testified that he did not assist Lee with taking any of the other items or putting them in the back of the truck.

The defendant denied entering the office, but testified that he was in front of it and may have been seen at that point. He indicated that he was in the truck when Lee attempted to drive off, but the truck would not start. The defendant then exited the truck and began pouring gas into the gas tank. The defendant testified that he was only guilty of taking gas and maintained that he tried to ask for it first and did not go to the residence with the intention of stealing anything.[12]

### III. Petitioner's Claims

### A. Sentencing Claim

Petitioner's first claim alleges that he was improperly adjudicated a "fourth or subsequent offender" under Louisiana law. For that claim to be properly understood and assessed, it is necessary to review the facts concerning that adjudication. Those facts are as follows.

After petitioner was convicted on the instant charge, the state sought an enhanced sentence by filing a multiple bill of information which read:

> Now comes Walter P. Reed, District Attorney, 22nd Judicial District, through the undersigned Assistant District Attorney, in the name of the State of Louisiana, comes into the Honorable Court and gives the said Court to understand and be informed that the above named defendant was duly convicted of the felony crime of **Attempted Simple Burglary on 6/12/2014**.

> And now the District Attorney informs the Court that the defendant has the following prior convictions:

> 1.  In the 22nd JDC, St. Tammany Parish and State of Louisiana, for the crime of Theft between $300-500, which occurred on June 7, 1999, and was Convicted on March 22, 2002, under Docket Number 311359, in which Lawrence was sentenced to 3 yrs suspended and 3 years probation;

> 2.  In the 22nd JDC, St. Tammany Parish and State of Louisiana, for the crime of Convicted Felon in Possession of a Firearm (having been convicted of Simple Burglary, on the 22nd day of March, 2002,

---

[12] State v. Lawrence, No. 2014 KA 1448, 2015 WL 996869, at *1-4 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 4 of 6.

Docket Number 320720 in the 22nd Judicial District Court, St. Tammany Parish) which occurred between July 21, 1999 and September 23, 1999, under Docket number 361200; in which Lawrence pled guilty on March 23, 2004 and was sentenced to serve a period of 3 years DOC suspended and 3 yrs probation. On March 23, 2004, Defendant Pled Guilty to RS14:95.1 with #320720 used as a predicate that occurred on November 18, 2002 under docket #361200 and was sentenced to 10 years DOC without parole.

3.       In the 22nd JDC, St. Tammany Parish and State of Louisiana for the crime of Unauthorized Entry of an Inhabited Dwelling (2 counts) which occurred on November 18, 2002, Lawrence Pled Guilty to both counts under 361201 on March 23, 2004, and was sentenced to 6 years DOC on each count to run concurrent.

4.       In Circuit Court of Pearl County, Mississippi for the crime of Possession of a Controlled Substance, 41-29-139, which occurred on October 28, 2011, Lawrence Pled Guilty on December 1, 2011 under Case # K-2010-188PC and was sentenced to 10 years in the Custody of Mississippi DOC. Defendant served one month and the remaining 9 years, 11 months were served under supervised probation.

That said defendant is one and the same person who was previously convicted in the listed case number(s) and should now be sentenced in conformity with the provisions of La. R.S. 15:529.1.[13]

After an evidentiary hearing, the state district judge adjudicated petitioner a "fourth or subsequent offender" under Louisiana law.[14] When petitioner challenged that adjudication on direct appeal, the Louisiana First Circuit Court of Appeal rejected his contention that "the habitual offender adjudication was based on multiple convictions obtained on the same day," holding:

[T]he defendant's fourth-felony habitual offender adjudication is based on predicate convictions consisting of guilty pleas that were entered on March 22, 2002, March 23, 2004, and December 1, 2011. Thus, the defendant's fourth or

---

[13] State Rec., Vol. 1 of 6, multiple bill of information.
[14] State Rec., Vol. 2 of 6, transcript of July 17, 2014. Louisiana law recognizes three categories of habitual offenders: second offenders; third offenders; and fourth or subsequent offenders. See La. Rev. Stat. Ann. § 15:529.1(A).

8

subsequent felony habitual offender adjudication does not rely on convictions obtained on the same day.[15]

The Louisiana Supreme Court thereafter denied petitioner's related writ application.[16]

Petitioner now argues, as he did in the state post-conviction proceedings, that his multiple offender adjudication was improper because it ran afoul of the *ex post facto* clause and, further, constituted an illegal "double enhancement." Specifically, he states:

> [T]he state committed a violation of the ex post facto clause of the United States Constitution by using multiple convictions obtained on the same day as separate convictions for enhancement purposes. The state applied the law in place at the time of the multiple offender sentencing to find him to be a fourth felony offender illegally where two of his predicate convictions were obtained prior to October 19, 2004. *La. R. S. 15:529.1(B)* states that multiple convictions obtained on the same day prior to October 19, 2004 may not be used separately for enhancement purposes. By the state applying the law in place at the time of the multiple offender hearing to obtain his multiple offender adjudication, it is clear that an ex post facto violation occurred. See: <u>State v. Paul Leblanc</u>, *156 So.3d 1168 (La. 2015).*
>
> In the case *sub judice*, the state attempted to hide a 'double enhancement'. See: <u>State v. Hymes</u>, *513 So.2d 371 (La. App. 4th Cir. 1987)*, where the court held that "an underlying felony conviction which is the basis or the predicate for *La. R. S. 15:529.1* cannot be used in conjunction with *La. R.S. 14:95.1* as predicate felonies. It is improper and illegal for the state to use the petitioner's first conviction to enhance the conviction for possession of a firearm by a convicted felon and then use it again in the multiple offender bill of information to enhance his sentence and find him to be a fourth felony offender.
>
> The state listed the sentence imposed for *"Theft Between $300-$500"* under docket no: 311359 by itself as the first predicate conviction on the multiple offender bill of information and used that conviction to enhance the petitioner's sentence. The state then listed his sentence for *"Simple Burglary"* under docket no: 320720 as a separate predicate conviction on the same multiple offender bill of information to enhance the petitioner's second conviction for *"Possession of a Firearm by a Convicted Felon"*, listed under docket no: 361200. In doing so, the state illegally split up two functionally consolidated convictions, which thus renders those sentences illegal and in violation of the statutory guidelines which were in place pursuant to *La. R. S. 15:529.1* at the time those convictions were obtained.[17]

---

[15] <u>State v. Lawrence</u>, No. 2014 KA 1448, 2015 WL 996869, at pp. 6-7 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 4 of 6.

[16] <u>State *ex rel.* Lawrence v. State</u>, 220 So. 3d 739 (La. 2017); State Rec., Vol. 4 of 6.

[17] Rec. Doc. 3, pp. 24-25.

In the state post-conviction proceedings, the state district court rejected that claim, holding:

> Petitioner has raised several claims that relate to his adjudication and sentence as a habitual offender. Petitioner asserts throughout his application that he should not have been adjudicated a fourth felony offender because his prior convictions were improperly counted. His argument is based on La. R.S. 15:529.1(D) which provides that "Multiple convictions obtained on the same day prior to October 19, 2004, shall be counted as one conviction for the purpose of this Section." This statute refers only to convictions listed in the habitual offender bill of information as a basis for enhancing petitioner's sentence.
>
> In petitioner's case, the State did not list case number 320720 as a predicate felony in the habitual offender bill of information, therefore it was not counted twice. The petitioner's sentence was enhanced based upon three prior convictions on three separate dates. The First Circuit pointed out in its opinion on petitioner's appeal that "the defendant's fourth-felony habitual offender adjudication is based on predicate convictions consisting of guilty pleas that were entered on March 22, 2002, March 23, 2004, and December 1, 2011." Therefore, petitioner's argument that improper double-counting has occurred has no merit, and [this claim] is denied.[18]

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[19] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[20]

To summarize: The multiple bill of information listed four predicate convictions:

1. Theft between $300-$500 (**docket number 311359**; conviction date **March 22, 2002**);

2. Felon in possession of a firearm (**docket number 361200**; conviction date **March 23, 2004**) [which was itself predicated on a conviction of simple burglary (docket number 320720; conviction date March 22, 2002)];

---

[18] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, pp. 1-2.

[19] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.

[20] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

3.      Unauthorized entry of an inhabited dwelling (**docket number 361201**; conviction date **March 23, 2004**); and

4.      Possession of a controlled substance (**docket number K-2010-188PC**; conviction date **December 1, 2011**).

Although petitioner's claim is somewhat convoluted, he appears to be making two separate arguments challenging his multiple offender adjudication.

Petitioner's first argument concerns the state's listing of both convictions **#1** and **#2** above in the multiple bill of information. He reasons: The conviction for being a felon in possession of a firearm (**#2**) was itself predicated on a prior conviction for simple burglary obtained on **March 22, 2002**. Although the state did not list that simple burglary conviction as a predicate offense in the multiple bill of information, it did list as a predicate offense *another conviction obtained on the same day as the simple burglary conviction*, i.e. the theft conviction in **#1**. He opines that is improper because the simple burglary conviction and the theft conviction are "functionally consolidated."[21]

It is true that, under Louisiana law, "[a] felon in possession of a firearm conviction may be used to enhance the penalty for a subsequent conviction *only* if the underlying felony used as an element of the firearm conviction is not also used in the same multiple bill." State v. Moten, 619 So. 2d 683, 685 (La. App. 4th Cir. 1993). In the instant case, however, the conviction used as an element of the firearm conviction, namely the simple burglary conviction in case number 320720, was *not* itself also listed as a predicate offense in the multiple bill of information. Petitioner nevertheless argues that the foregoing rule should still apply because, although the simple burglary

---

[21] See Rec. Doc. 3, pp. 27-28.

conviction was not itself listed in the multiple bill of information, it was both (1) used as an element of the firearm conviction listed in the multiple bill of information, and (2) obtained on the same date as the theft conviction listed in the multiple bill of information.

However, the issue of whether the Louisiana law prohibition extends to also cover the foregoing scenario presents a question of *state* (not federal) law, and the state courts are the final arbiters on such issues of state law. See Levy Gardens Partners 2007, L.P. v. Commonwealth Land and Title Insurance Co., 706 F.3d 622, 629 (5th Cir. 2013) ("The principle that state courts are the final arbiters of state law is well-settled."); Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991) ("We will not review a state court's interpretation of its own law in a federal habeas corpus proceeding. We do not sit as a 'super' state supreme court in such a proceeding to review errors under state law." (internal citation and quotation marks omitted)). Moreover, in denying him relief, the Louisiana Supreme Court implicitly rejected petitioner's argument on that state law issue. It would therefore be inappropriate for this federal court to second-guess the Louisiana Supreme Court on that state-law conclusion. See Charles v. Thaler, 629 F.3d 494, 500-01 (5th Cir. 2011) ("A federal court lacks authority to rule that a state court incorrectly interpreted its own law. When, as here, a state court's legal conclusions are affirmed by the highest court in that state, those conclusions *are* state law."). Accordingly, federal relief is not warranted based on petitioner's first argument.

Petitioner's second argument concerns the state's listing of both convictions **#2** and **#3** above in the multiple bill of information.[22] Because both of those convictions were obtained on the same day, i.e. **March 23, 2004**, he argues that listing of both of those convictions in the

---

[22] See id. at p. 29.

multiple bill of information violated Louisiana's rule providing that "[m]ultiple convictions *obtained on the same day prior to October 19, 2004,* shall be counted as *one* conviction for the purpose of" multiple offender adjudications.  La. Rev. Stat. Ann. § 15:529.1(B) (emphasis added).

That second argument is more compelling than the first, because the use of both of those convictions does appear to run afoul of the cited prohibition.  Moreover, the state does not expressly address that seeming problem in its response, except to obliquely argue that, in any event, the use of both of the convictions would not constitute a violation of the *Ex Post Facto* Clause, which is the federal theory petitioner primarily identified as the foundation of his claim.[23]

The state is correct that the *ex post facto* argument is inapposite.  The *Ex Post Facto* Clause provides:  "No State shall ... *pass any ... ex post facto Law* ...."  U.S. Const., art. I, § 10, cl. 1 (emphasis added).  The United States Supreme Court has therefore observed:  "As the text of the Clause makes clear, it is a limitation upon the powers of the *Legislature,* and does not of its own force apply to the *Judicial Branch* of government."  Rogers v. Tennessee, 532 U.S. 451, 456 (2001) (emphasis added; quotation marks omitted).  The Supreme Court moreover declined to so extend the Clause's reach:

> The *Ex Post Facto* Clause, by its own terms, does not apply to courts.  Extending the Clause to courts through the rubric of due process thus would circumvent the clear constitutional text.  It also would evince too little regard for the important institutional and contextual differences between legislating, on the one hand, and common law decisionmaking, on the other.

Id. at 460.

That said, the Supreme Court nevertheless noted that "limitations on *ex post facto* judicial decisionmaking are inherent in the notion of *due process.*" Id. at 456 (emphasis added).  That is

---

[23] Rec. Doc. 9, pp. 10-11.

true because although the *Ex Post Facto* and Due Process Clauses apply in different contexts, they both similarly "safeguard common interests – in particular, the interests in fundamental fairness (through notice and fair warning) and the prevention of the arbitrary and vindictive use of the laws." See id. at 460. As a result, while the *Ex Post Facto* Clause is inapplicable to judicial decisionmaking, the Due Process Clause *separately* "protects against vindictive or arbitrary judicial lawmaking by safeguarding defendants against unjustified and unpredictable breaks with prior law." Id. Therefore, "a judicial alteration of a common law doctrine of criminal law violates the principle of fair warning, and hence must not be given retroactive effect, only where it is unexpected and indefensible by reference to the law which had been expressed prior to the conduct in issue." Id. Moreover, it must be noted that petitioner also expressly argues that his multiple offender adjudication violated that *due process* limitation.[24]

However, this Court need not decide the extent to which the foregoing is applicable in this case because a simpler answer will suffice: *even if* the use of both convictions #2 and #3 to adjudicate petitioner as a multiple offender might run afoul of that limitation, it does not necessarily follow that he is entitled to federal relief. That is true because his argument is premised on an underlying contention that he would be only a *third* offender (and, as such, would not be subject to the more draconian provisions applicable to "fourth and subsequent offenders") if convictions #2 and #3 could not be used in the habitual offender adjudication.[25]    That, though, misses the point – because even if the state could not use *both* of those convictions, it clearly could still legitimately use *one* of them.

---

[24] Rec. Doc. 3, p. 26.
[25] See id. at p. 30.

That fact is fatal to petitioner's argument, because the use of only one of the two convictions would still make petitioner a "fourth or subsequent offender." For example, let us say that the use of conviction **#2** was improper. Once conviction **#2** is disregarded, petitioner's second argument is moot, as is his first argument.[26] However, even without the use of conviction **#2**, **convictions #1, #3, and #4 remain** – and he is still now a "fourth or subsequent offender" subject to the sentence he received.

Accordingly, *even if* petitioner was erroneously adjudicated as a multiple offender based on *all four* of the convictions listed in the multiple bill of information, **a fact which is arguably unclear,**[27] that error, if it occurred, was ultimately harmless.

## B. Right to an Impartial Jury

Petitioner's second claim is that he was denied his right to an impartial jury by Jeffery Barfield's selection as a juror. During *voir dire*, the trial judge asked the prospective jurors, including Barfield, whether anyone was "familiar with" petitioner; no one answered that they were.[28] However, petitioner alleges:

> Mr. Lawrence and juror Barfield have known each other since they were children and have never been on friendly terms by any standards. In fact, these two men have never gotten along at all. During a period in their adulthood they were both working together for the St. Tammany Parish Police Jury and had conflicts and arguments during that time frame as well. The petitioner avers that they had several arguments over the years and contends that Juror Barfield lied during the

---

[26] If conviction **#2** is disregarded, that likewise moots petitioner's previously discussed "functional equivalency" argument, because that argument was also based on the use of conviction **#2**.

[27] **It must be noted that in denying petitioner's claim in the state post-conviction proceedings, the state district court observed: "The petitioner's sentence was enhanced based upon *three prior convictions* on three separate dates." State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, p. 2 (emphasis added). The Louisiana First Circuit Court of Appeal and the Louisiana Supreme Court then denied the related writ applications challenging that judgment. State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.**

[28] State Rec., Vol. 2 of 6, trial transcript.

*voir dire* examination so that he could participate on the jury for this trial and this has resulted in a manifest injustice that now requires a new trial.[29]

In support of that claim in the state post-conviction proceedings, petitioner submitted a letter from Jill Taillac, Human Resource Manager for the St. Tammany Parish Government, in which she stated: "Please be advised that St. Tammany Parish Government employed a James M. Lawrence from 6/28/1999 until 08/05/1999 and was assigned to the Folsom (Willie Road) Maintenance Barn. A Jeff Barfield was also employed during that same time and also assigned to the Folsom (Willie Road) Maintenance Barn."[30] Petitioner also submitted an affidavit from his mother, Karen Shattuck, in which she stated:

> I, Karen Shattuck, am stating that my son, James M. Lawrence, does in fact know Jeff Barfield and has since they were boys.
>
> The Barfields are friends of ours and we spent time together when the boys were younger. James and Jeff did not hang out with the same people and did not really get along together as friends.[31]

In its response to the post-conviction application, the state countered by producing an affidavit from Barfield. In that affidavit, Barfield stated:

> 1.   I am over the age of 18 and am a resident of the State of Louisiana. I have personal knowledge of the facts herein, and if called as a witness could testify competently thereto.
>
> 2.   I served as a juror during the June 2014 trial in the matter of *State of Louisiana v. James Lawrence*.
>
> 3.   On or about June 14, 2018, I spoke by telephone with Assistant District Attorney Matthew Caplan and he requested that I address allegations made by James Lawrence that he and I had known each other since children, have never gotten along, and have had "multiple heated exchanges" with one another and "exhibited an obvious discomfort around one another."

---

[29] Rec. Doc. 3, p. 31.
[30] State Rec., Vol. 5 of 6, post-conviction application.
[31] Id.

16

4.    My response is contained in a one-page letter, which is attached to this affidavit.

5.    Everything stated in the attached letter is true.[32]

In the attached letter, Barfield stated:

My name is Jeffery Michael Barfield and I have been a resident of St. Tammany Parish my entire life. I was selected to be a Juror in June 2014 involving a case with James Lawrence. I was asked under oath if I knew Mr. Lawrence and I truthfully without a doubt in my mind did not know this man. Mr. Lawrence, as I recall, had a shaved head and no facial hair. The trial began and I sat through the entire trial thinking about the evidence presented and wholeheartedly feeling as I was doing my civic duty. However, toward the very end of the trial as the jury was about to be released to deliberate on our verdict, I realized that the man being accused of these crimes was someone I knew as a child as Michael Shattock [sic]. As I walked back to deliberate with my fellow jurors I was faced with a personal decision. Could I be fair with no bias and provide a fair trial or should I bring to light that I now recognize the defendant? I felt as if I did not know him personally in a way that would jeopardize me being a juror. I knew Michael when we were children as an acquaintance only. I remember him being a good kid just like most people I grew up with. I knew him as Michael Shattock [sic]. The trial finished and jury did our duty based on the facts presented at trial reached a fair verdict.
Now four years later I am being notified that Mr. Lawrence is accusing me of not only knowing him but having some sort of ill will towards him. This cannot be further from the truth. As children, from what I can recall, we never had any altercation or disagreement or any other ill exchange to cause Mr. Lawrence to think that I would be any enemy or threat towards him. Mr. Lawrence also states that he worked for St. Tammany Parish Public Works the same time I was employed. Under the circumstances that is an unbelievable coincidence. I do not recall one time that I spoke with or crossed paths with Mr. Lawrence while working for St. Tammany Parish Public Works. I feel terrible that this situation has presented itself. I do not understand why Mr. Lawrence feels the way he does. I felt as if I was doing the right thing and in no way wanted to be unfair to Mr. Lawrence or the citizens of St. Tammany Parish. I apologize for this situation we find ourselves in now four years later. An honest mistake on my part seems like a bit of a reach on his part. Thank you for your time.[33]

---

[32] State Rec., Vol. 5 of 6, affidavit of Jeffery Barfield dated June 25, 2018.
[33] Id.

In the state post-conviction proceedings, the state district court then rejected petitioner's claim, holding:

> [P]etitioner alleges that his 6th Amendment rights were violated when the State allowed a biased juror, Jeffery Barfield, to sit on the jury. Petitioner asserts in [a related ineffective assistance of counsel claim] that trial counsel completely disregarded petitioner's concern that "he had known one of the jurors (Barfield) and that they had never gotten along with each other and feared there would be a conflict." The Louisiana Supreme Court addressed the issue of biased juror claims in *St. v. Lacaze, 16-0234 (La. 12/16/16), 208 So. 3d 856, 861-862*. The Court summarized previous jurisprudence and noted that to prevail on this claim a petitioner must show that the juror failed to honestly answer a material question during voir dire and "must also show that the juror harbored actual bias, or at least point to specific facts from which bias must be presumed." *Lacaze, supra at 861-862*. Based on the reasoning and argument set forth by the State in its Response to the Application for Post-Conviction Relief, the Court finds that petitioner failed to show that the juror, Jeffery Barfield, failed to honestly answer a question. Mr. Barfield's affidavit submitted by the State in response supports that Mr. Barfield did not recognize petitioner during voir dire, as his name was different and he did not look the same. Further, there is no showing that Mr. Barfield had any actual or presumed bias or ill will towards the petitioner, as Mr. Barfield attests that he was simply acquainted with the petitioner as a child. Accordingly, these claims have no merit and are denied.[34]

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[35] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[36]

Here, both petitioner and the state opine that the clearly established federal law governing this claim is McDonough Power Equipment, Inc. v. Greenwood, 464 U.S. 548 (1984).[37] The undersigned agrees. Although McDonough was a civil personal injury case, the United States Fifth Circuit Court of Appeals has held that it is applicable in federal habeas corpus proceedings.

---

[34] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, p. 3.
[35] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.
[36] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.
[37] See Rec. Doc. 3, p. 34; Rec. Doc. 9, p. 13.

Buckner v. Davis, 945 F.3d 906, 910-11 & n.15 (5th Cir. 2019), cert. denied, No. 19-8128, 2020 WL 2814813 (U.S. June 1, 2020).

In McDonough, the United States Supreme Court observed:

> This Court has long held that a litigant is entitled to a fair trial but not a perfect one, for there are no perfect trials. Trials are costly, not only for the parties, but also for the jurors performing their civic duty and for society which pays the judges and support personnel who manage the trials. It seems doubtful that our judicial system would have the resources to provide litigants with perfect trials, were they possible, and still keep abreast of its constantly increasing case load. …
> We have also come a long way from the time when all trial error was presumed prejudicial and reviewing courts were considered citadels of technicality. The harmless error rules adopted by this Court and Congress embody the principle that courts should exercise judgment in preference to the automatic reversal for "error" and ignore errors that do not affect the essential fairness of the trial.

McDonough, 464 U.S. at 553 (citations, quotation marks, and brackets omitted). The Supreme Court then went on to hold that invalidating a trial's result "because of a juror's *mistaken, though honest* response to a question, is to insist on something closer to perfection than our judicial system can be expected to give." Id. at 555 (emphasis added). The Supreme Court therefore concluded:

> A trial represents an important investment of private and social resources, and it ill serves the important end of finality to wipe the slate clean simply to recreate the peremptory challenge process because counsel lacked an item of information which objectively he should have obtained from a juror on *voir dire* examination. … We hold that to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire*, and then further show that a correct response would have provided a valid basis for a challenge for cause. The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial.

Id. at 555-56.

Because this claim was denied on the merits in state court, this Court must determine whether the state court's decision was contrary to, or involved an unreasonable application of,

McDonough.  See 28 U.S.C. § 2254(d)(1).  For the following reasons, the undersigned finds that it was not.

As noted *supra*, a state court decision violates the "contrary to" prong of the AEDPA analysis if "the state court applies a rule that *contradicts* the governing law set forth in the [United States] Supreme Court's cases."  Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (emphasis added; brackets omitted).  Although the state court in this case cited neither McDonough nor any other federal case, it cited State v. LaCaze, a Louisiana state case which expressly cited and applied McDonough.  See State v. LaCaze, 208 So. 3d 856, 861 (La. 2016) ("The United States Supreme Court has found that a petitioner who collaterally attacks his conviction based on alleged juror dishonesty during voir dire must demonstrate (1) that the juror failed to honestly answer a material question and (2) that a correct response would have provided a meritorious basis for a challenge for cause. McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 556, 104 S.Ct. 845, 850, 78 L.Ed.2d 663 (1984).").  Therefore, because the state court employed an analysis that was consistent with the clearly established federal law, the state court's decision was "contrary to" to such law only if the state court arrived at a different result than was reached by the United States Supreme Court in a case with "materially indistinguishable" facts. See Wooten, 598 F.3d at 218. Petitioner has not cited, and this Court's independent research has not found, such a case. Accordingly, petitioner has not established that relief is warranted under the "contrary to" prong of the AEDPA analysis.

The only remaining question is whether the state court's decision violated the "unreasonable application" prong of the AEDPA analysis.  For the following reasons, the undersigned finds that it did not.

Barfield asserted that, during *voir dire*, he did not recognize petitioner (or the name he was using, Jeffrey Lawrence) as the individual he knew as Michael Shattuck. The state court therefore found that although Barfield was mistaken, he was not intentionally dishonest during *voir dire*. This federal court must presume that the state court's finding on that point was correct. See Buckner v. Davis, 945 F.3d 906, 910 (2019) ("On federal habeas review, state court findings concerning a juror's impartiality are factual determinations entitled to a presumption of correctness."), cert. denied, No. 19-8128, 2020 WL 2814813 (U.S. June 1, 2020). Therefore, to be entitled to relief, petitioner must rebut that presumption with "clear and convincing evidence" showing otherwise. 28 U.S.C. § 2254(e)(1) ("The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Petitioner has not met that burden. The evidence he presents, namely Taillac's letter, his mother's affidavit, and his own allegations, falls far short of that standard. Neither Taillac's letter nor his mother's affidavit is inconsistent with Barfield's explanation, while petitioner's own allegations are obviously self-serving and suspect.

Because petitioner has not presented "clear and convincing" evidence to overcome the presumption of correctness attached to the state court's finding that Barfield's explanation was credible, this Court cannot say that the state court's legal conclusion based on that factual finding was unreasonable. On the contrary, it is clear that a juror's honest, albeit mistaken, answer during *voir dire* is insufficient to meet the dishonesty prong of the McDonough test. See Hatten v. Quarterman, 570 F.3d 595, 602 (5th Cir. 2009) ("[The juror's] answers at the time he filled out his jury questionnaire were honest yet inaccurate, something McDonough expressly permits."

(quotation marks and ellipsis omitted)).  Therefore, under the AEDPA's deferential standards of review, this claim should be denied.[38]

## C.  Brady violation

Petitioner's third claim is that the prosecution suppressed evidence in violation of <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), and its progeny.  Specifically, he alleges that the prosecution did not produce the 911 tapes, photographs, and his co-defendant's guilty plea in a timely fashion.

With respect to such claims, the United States Supreme Court has held:

> A <u>Brady</u> violation occurs when the government fails to disclose evidence materially favorable to the accused. This Court has held that the <u>Brady</u> duty extends to impeachment evidence as well as exculpatory evidence, and <u>Brady</u> suppression occurs when the government fails to turn over even evidence that is known only to police investigators and not to the prosecutor.

<u>Youngblood v. West Virginia</u>, 547 U.S. 867, 869-70 (2006) (internal citations and quotation marks omitted).  Therefore, to prevail on a <u>Brady</u> claim, a petitioner "must show that (1) the state withheld evidence, (2) the evidence was favorable to the accused, and (3) the evidence is material to guilt or punishment."  <u>DiLosa v. Cain</u>, 279 F.3d 259, 262-63 (5th Cir. 2002).

In rejecting this claim on post-conviction review, the state district court held that the claim failed because the evidence simply was not withheld from the defense:

> [P]etitioner alleges the State withheld exculpatory evidence including 911 tapes, photographs, and the fact that the petitioner's co-defendant had previously pled guilty.  The trial transcript supports that the audio recording of the 911 calls and the photographs were provided to defense counsel prior to petitioner's trial, and there was a bench conference in which defense counsel acknowledged receipt of these items.  The fact that petitioner's co-defendant, Justin Lee, pled guilty on June 9, 2014 was presented to the jury during the trial.  Therefore, the Court finds that none

---

[38] That, of course, is not to say that Barfield acted wholly appropriately.  He did not.  As petitioner suggests, at a minimum, Barfield should have advised the trial court when he realized that he did, in fact, know petitioner. Nevertheless, that error on Barfield's part was not of such a magnitude that it rendered petitioner's trial so unfair as to warrant this federal court to take the drastic step of overturning a state conviction.

of these items or information were suppressed from the defendant. [This claim] is without merit and is denied.[39]

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[40] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[41]

Because this claim was denied on the merits in state court, this Court's role is limited to deciding "whether the state court's Brady determination resulted in a decision that [was] contrary to, or involved an unreasonable application of, clearly established federal law." Dickson v. Quarterman, 462 F.3d 470, 477-78 (5th Cir. 2006). For the following reasons, the undersigned finds it was not.

As already explained herein, a state court decision violates the "contrary to" prong of the AEDPA analysis if "the state court applies a rule that *contradicts* the governing law set forth in the [United States] Supreme Court's cases." Wooten v. Thaler, 598 F.3d 215, 218 (5th Cir. 2010) (emphasis added; brackets omitted). Although the state court did not city Brady or its progeny in denying this claim, that, as already noted, is immaterial. See Early v. Packer, 537 U.S. 3, 8 (2002) ("Avoiding [§ 2254(d)(1)'s] pitfalls does not require citation of our cases – indeed, it does not even require *awareness* of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."); Caldwell v. Davis, 757 F. App'x 336, 340 (5th Cir. 2018) ("A state court does not need to expressly identify the federal standard."). Instead, again, the issue is merely whether the court's analysis was *inconsistent* with the federal standard. Here, it was not; as the

---

[39] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, pp. 3-4.
[40] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.
[41] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

state court correctly noted, the preliminary inquiry with respect to such a claim concerns whether the evidence in question was in fact withheld from the defense.

Of course, as also already noted, a state court decision is also "contrary to clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of the [United States] Supreme Court and nevertheless arrives at a result different from [United States] Supreme Court precedent." Wooten, 598 F.3d at 218 (quotation marks, brackets, and ellipsis omitted). Once again, however, petitioner has not cited, and this Court's independent research has not found, such a case.

Therefore:

> Because [petitioner] cannot prevail on his claim that the state court's decision was "contrary to" federal law, he must show that it was an "unreasonable application" of federal law. To be an "unreasonable application," there must be "*no possibility* fairminded jurists could disagree that the state court's decision conflicts with [the Supreme Court's] precedents. Harrington v. Richter, 562 U.S. 86, 102, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011) (emphasis added).

Caldwell, 757 F. App'x at 341. For the following reasons, the undersigned finds that the state court did not unreasonably apply Brady and its progeny.

Here, as noted by the state court, the evidence at issue simply was not "withheld" from the defense. In fact, even petitioner himself concedes that the evidence was provided to the defense *on the evening before the trial began*.[42] That alone suffices to foreclose his Brady claim, because evidence provided to the defense *before or at trial* is not considered to have been "withheld" in violation of Brady. See, e.g., Lawrence v. Lensing, 42 F.3d 255, 257 (5th Cir. 1994) ("Brady claims involve the discovery, *after trial* of information which had been known to the prosecution

---

[42] Rec. Doc. 3, p. 39.

but unknown to the defense.  Because we find that [the evidence was] disclosed *at trial*, we hold that the prosecution did not suppress any evidence." (emphasis added; citation and quotation marks omitted)); United States v. McKinney, 758 F.2d 1036, 1049-50 (5th Cir. 1985) (holding that the prosecution did not suppress evidence where Brady materials were disclosed at trial and reasoning that "[i]f the defendant received the material in time to put it to effective use at trial, his conviction should not be reversed simply because it was not disclosed as early as it might have, and indeed, should have been"); Smith v. Travis, Civ. Action No. 08-4627, 2009 WL 1704335, at *10 (E.D. La. June 16, 2009) ("Where, as here, the evidence at issue came to light during trial in sufficient time for defense counsel to put it to effective use, it was not 'suppressed' in violation of Brady and its progeny."); Stogner v. Cain, Civ. Action No. 05-4317, 2008 WL 269078, at *20 (E.D. La. Jan. 30, 2008) (same); Baker v. Cain, Civ. Action No. 05-3772, 2007 WL 1240203, at *5 (E.D. La. Apr. 26, 2007) (same).[43]

At worst, the prosecutor's action may have been a discovery violation.  However, even if so, that is immaterial in this federal proceeding.  There is no general federal constitutional right to discovery in a criminal case, and, therefore, a claim that a prosecutor violated state discovery rules simply is not cognizable on federal habeas review.  Weatherford v. Bursey, 429 U.S. 545, 559 (1977); Lande v. Cooper, Civ. Action No. 11-3130, 2013 WL 5781691, at *16 (E.D. La. Oct. 25, 2013); Smith, 2009 WL 1704335, at * 10; Burns v. Lafler, 328 F. Supp. 2d 711, 723 (E.D. Mich. 2004).  Because the evidence at issue simply was not "withheld" from the defense, petitioner failed

---

[43] The undersigned is aware that petitioner attempts to avoid this general rule by arguing that the delayed production of the evidence prevented defense counsel from putting the evidence to effective use.  See, e.g., Rec. Doc. 3, p. 36 ("Had the petitioner been given said evidence within a reasonable time frame, he could have reviewed the evidence and been better prepared for trail [sic] and used said evidence to prove his innocence and prepare better trial strategies.").  However, defense counsel made no argument at trial that the defense was prejudiced by the delayed production.

to argue at trial that he was prejudiced by the delayed production, and any alleged violation of state discovery rules is not cognizable on federal habeas review, petitioner's <u>Brady</u> claim fails.

### D. Ineffective Assistance of Counsel

Lastly, petitioner claims that his trial and appellate counsel were ineffective in numerous respects. The clearly established federal law with respect to such claims was set forth by the United States Supreme Court in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). Under <u>Strickland</u>, a petitioner has the burden of proving both that his counsel's performance was deficient and that the deficient performance prejudiced his defense. <u>Id.</u> at 697.

To prevail on the deficiency prong of the <u>Strickland</u> test, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment. <u>See</u> <u>Styron v. Johnson</u>, 262 F.3d 438, 450 (5th Cir. 2001). Counsel's performance was deficient if it fell "below an objective standard of reasonableness." <u>Little v. Johnson</u>, 162 F.3d 855, 860 (5th Cir. 1998). Analysis of counsel's performance must consider the reasonableness of counsel's actions in light of all the circumstances. <u>See</u> <u>Strickland</u>, 466 U.S. at 689. "[I]t is necessary to 'judge ... counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct.'" <u>Lockhart v. Fretwell</u>, 506 U.S. 364, 371 (1993) (quoting <u>Strickland</u>, 466 U.S. at 690). The petitioner must overcome a strong presumption that the conduct of his counsel fell within a wide range of reasonable representation. <u>See</u> <u>Crockett v. McCotter</u>, 796 F.2d 787, 791 (5th Cir. 1986); <u>Mattheson v. King</u>, 751 F.2d 1432, 1441 (5th Cir. 1985).

The appropriate standard for determining prejudice varies slightly depending on whether a petitioner is challenging the actions of trial or appellate counsel. In order to prove prejudice with respect to trial counsel, a petitioner "must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In this context, a reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." Crockett, 796 F.2d at 793. On the other hand, to prove prejudice with respect to a claim that appellate counsel was ineffective, a petitioner must show a reasonable probability that he would have prevailed on appeal but for his counsel's deficient representation. Briseno v. Cockrell, 274 F.3d 204, 207 (5th Cir. 2001); see also Smith v. Robbins, 528 U.S. 259, 286 (2000). Therefore, a petitioner must demonstrate a reasonable probability that, if appellate counsel's performance had not been deficient in the manner claimed, the appellate court would have vacated or reversed the trial court judgment based on the alleged error. Briseno, 274 F.3d at 210.

In the state post-conviction proceedings, petitioner's ineffective assistance of counsel claim was denied on the merits. In light of that fact, and because such a claim presents a mixed question of law and fact, this Court must defer to the state court decision rejecting petitioner's claim unless that decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Moore v. Cockrell, 313 F.3d 880, 881 (5th Cir. 2002). Further, the United States Supreme Court has explained that, under the AEDPA, federal habeas corpus review of an ineffective assistance of counsel claim is in fact *doubly* deferential:

> The pivotal question is whether the state court's application of the Strickland standard was unreasonable. This is different from asking whether defense counsel's performance fell below Strickland's standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were

adjudicating a <u>Strickland</u> claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the <u>Strickland</u> standard itself.

     A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision. <u>Yarborough v. Alvarado</u>, 541 U.S. 652, 664, 124 S.Ct. 2140, 158 L.Ed.2d 938 (2004). And as this Court has explained, "[E]valuating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations." <u>Ibid</u>. "[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." <u>Knowles v. Mirzayance</u>, 556 U.S. ____, ____, 129 S.Ct. 1411, 1413-14, 173 L.Ed.2d 251 (2009) (internal quotation marks omitted).

<u>Harrington v. Richter</u>, 562 U.S. 86, 101 (2011) (citation omitted). The Supreme Court then explained:

     Surmounting <u>Strickland</u>'s high bar is never an easy task. An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the <u>Strickland</u> standard must be applied with scrupulous care, lest intrusive post-trial inquiry threaten the integrity of the very adversary process the right to counsel is meant to serve. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is all too tempting to second-guess counsel's assistance after conviction or adverse sentence. The question is whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom.

     Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. *The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.* The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d). *When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.*

Id. at 105 (emphasis added; citations omitted). Therefore, on habeas review of an ineffective assistance claim, "federal courts are to afford *both* the state court *and* the defense attorney the benefit of the doubt." Woods v. Etherton, 136 S. Ct. 1149, 1151 (2016) (emphasis added; quotation marks omitted). For the following reasons, the Court finds that, under those stringently deferential standards, it simply cannot be said that relief is warranted with respect to any aspect of petitioner's ineffective assistance of counsel claim.

## 1. Advice Regarding Plea

Petitioner first alleges that counsel advised him to plead guilty in exchange for a twenty-year sentence before discovery was even completed. Prior to trial, plaintiff acknowledged on the record that he rejected a plea bargain against the advice of counsel; however, the record reflects that the plea bargain called for a *fifteen*-year sentence.[44]

In the state post-conviction proceedings, the state district court denied this claim, holding:

[P]etitioner alleges that his trial counsel advised him to take a plea bargain of 20 years. The record reflects that trial counsel advised petitioner of the probability of conviction, predicted the likely sentence in the event of conviction and advised petitioner accordingly in accordance with McMann v. Richardson, 397 U.S. 759, 769-771 (1970). The transcript supports that petitioner rejected the plea bargain against the advice of counsel. Petitioner has failed to demonstrate that his counsel was either deficient in his performance or that petitioner was prejudiced by his counsel's performance. Therefore, this claim is denied.[45]

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[46] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[47]

---

[44] State Rec., Vol. 2 of 6, trial transcript.
[45] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, p. 4.
[46] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.
[47] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

Although the undersigned agrees that an attorney should not advise his client regarding a plea without at least some understanding of the facts and evidence of the case, it has not been established that occurred here. Nonetheless, even if it occurred, it must be remembered that counsel *advised petitioner to take the plea bargain.* Regardless of how counsel arrived at that advice, the advice was ultimately proven *correct* – petitioner would have fared better if he had accepted the plea bargain. A petitioner has not suffered Strickland prejudice where he was given advice that, despite having been given "without proper factual or legal inquiry," was "nevertheless correct." Cooper v. Fitzharris, 586 F.2d 1325, 1331 n.11 (9th Cir. 1978); see also Sand v. Estelle, 551 F.2d 49, 51 (5th Cir. 1977) ("The writ of habeas corpus should not be granted solely because an attorney's correct advice was due to luck rather than to skill.").

## 2. Failure to Enter Evidence into the Record

Petitioner next alleges that counsel was ineffective for failing to enter the 911 tapes and the co-defendant's guilty plea into evidence. In the state post-conviction proceedings, the state district court denied that claim, holding:

> [T]he petitioner argues that his attorney "never entered the 911 tapes or his co-defendant's guilty plea into evidence so that evidence could later be played for the jury to support his client's claim of innocence" and that it "seriously prejudiced the defendant in that this evidence is both exculpatory and impeaching evidence." Petitioner's claim regarding the 911 tapes was addressed by the First Circuit on appeal, and the court found no prejudice. Therefore, this Court denies the claim pursuant to La. C.Cr.P. art. 930.4(A). As to petitioner's allegation that his co-defendant's guilty plea was not introduced into evidence, this claim is without merit because his co-defendant's guilty plea was actually entered into evidence at the trial as supported by the record in this matter. Therefore, there has been no showing made by petitioner that his counsel's performance was deficient, or that petitioner was prejudiced. Accordingly, [this claim] is denied.[48]

---

[48] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, p. 4.

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[49]  The Louisiana Supreme Court thereafter likewise denied relief, stating:  "Applicant fails to satisfy his post-conviction burden of proof.  La.C.Cr.P. art. 930.2."[50]

Fatal to this claim, as the state points out in its response, is the fact that the compact disc containing the 911 calls and the co-defendant's guilty plea were entered into evidence at trial *by the prosecutor*.  Because they were already in evidence, defense counsel did not perform deficiently by failing to offer them into evidence again during the defense's portion of the trial, and no prejudice resulted from counsel's failure to do so.  That aspect of petitioner's claim is simply incorrect.

The one portion of petitioner's claim which is correct is that, although Mr. Cardwell's 911 call was played for the jury, Mrs. Cardwell's separate 911 call was *not*.  However, on direct appeal, the Louisiana First Circuit Court of Appeal noted:

> The defendant contends that his counsel failed to ensure that the jury heard the recording of Mrs. Cardwell's 911 call, which was made simultaneous to Mr. Cardwell's call. [FN 4]  Both recordings are contained on a single compact disc that the State introduced into evidence; therefore, although it was not played for the jury, the recording of Mrs. Cardwell's call is part of the record before us and we are able to review its content.  The defendant is incorrect in asserting that Mrs. Cardwell's call would have proven that he was at the door and not in the shed.  At the beginning of her call, Mrs. Cardwell stated that someone was in the process of stealing items from their building adjacent to their home, and noted that the person was observed *after* she heard banging at the front door.  Thus, Mrs. Cardwell's call establishes that the banging at the door occurred before, and not while, items were being removed from the office and shed.  The details relayed during Mrs. Cardwell's call were consistent with those provided by Mr. Cardwell and would not have rendered the jury's rejection of the defendant's hypothesis of innocence unreasonable.

---

[49] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.

[50] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

[FN 4]  During Mr. Cardwell's call, Mrs. Cardwell can be heard speaking in the background.  The 911 operator speaking to Mr. Cardwell confirmed that Mrs. Cardwell was on another line with another 911 operator.[51]

Because Mrs. Caldwell's call was consistent with her husband's call and was not in and of itself beneficial to the defense, there is no basis for this Court to say that counsel performed deficiently by failing to have that call played for the jury – or that petitioner suffered any prejudice as a result of that failure.

### 3.  Failure to Challenge or Strike Juror Barfield

Petitioner also alleges that counsel was ineffective for failing to challenge Jeffery Barfield for cause or to use a peremptory strike to remove him from the jury.  In the state post-conviction proceeding, the state district court considered and denied that claim, along with petitioner's related underlying substantive claim regarding Barfield's selection as a juror, for the reasons also already quoted on page 18 of this Report and Recommendation.[52]  The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[53]  The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof.  La.C.Cr.P. art. 930.2."[54]

With respect to this claim, petitioner states:

During the voir dire phase of the proceedings, the defendant avers that he specifically told his attorney Mr. Alan Tusa that he had known one of the jurors since they were children and that they had never gotten along with each other and feared there would be a conflict.  Despite his client expressing his concern, defense counsel completely disregarded this information and never brought this matter up before the court.

---

[51] State v. Lawrence, No. 2014 KA 1448, 2015 WL 996869, at *5 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 4 of 6.
[52] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, p. 3.
[53] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.
[54] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

> This matter was raised again by the defendant during trial to his counsel and counsel stated to the defendant "Hush, or it will be a mistrial."[55]

However, as the Louisiana Supreme Court correctly noted, this claim fails because petitioner simply has not met his burden of proof. For example, he has not presented any reliable evidence (such as an affidavit from Tusa – or an affidavit from a disinterested third person who overheard, or was otherwise aware of, the purported conversation with Tusa) to prove that the purported conversation actually occurred.[56] In the absence of such evidence, this Court has no basis for concluding that the state court was unreasonable in concluding that petitioner failed to meet his burden of proof.

### 4. Failure to Adequately Prepare for and

### Defend Against the Multiple Offender Adjudication

Petitioner next alleges that counsel failed to adequately prepare for the multiple offender hearing. He further faults counsel for not challenging the multiple offender adjudication as a prohibited *ex post facto* violation and "double enhancement." Lastly, he alleges that counsel lost and failed to introduce into evidence at sentencing letters concerning petitioner's employment and character. The state district court denied those claims as procedurally defaulted, noting that Louisiana law prohibited ineffective assistance of counsel claims related to sentencing from being asserted in post-conviction proceedings.[57] The Louisiana First Circuit Court of Appeal then denied

---

[55] Rec. Doc. 3, pp. 41-42.

[56] Petitioner may not have produced such evidence simply because no such conversation occurred. In his response to petitioner's state post-conviction application, the assistant district attorney stated that he had spoken to defense counsel concerning petitioner's allegation and that "Mr. Tusa denies the petitioner's account in its entirety." State Rec., Vol. 5 of 6, State's Response to James Michael Lawrence's Application for Post-Conviction Relief, p. 8.

[57] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, p. 2. See State v. Cotton, 45 So. 3d 1030 (La. 2010) ("[R]espondent's claim that he received ineffective assistance of counsel at his habitual offender adjudication is not cognizable on collateral review so long as the sentence imposed by the court falls within the range of the sentencing statutes.").

petitioner's related writ application without assigning reasons.[58]  The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof.  La.C.Cr.P. art. 930.2."[59]

As to petitioner's contention that his counsel was ineffective for failing to adequately prepare for the multiple offender hearing and to challenge the multiple offender adjudication as a prohibited *ex post facto* violation and "double enhancement," that contention requires little additional discussion.  For the reasons previously explained in detail in this opinion, petitioner would have validly been adjudicated as a "fourth or subsequent offender" even if his arguments concerning the problematic use of the four predicate convictions in the multiple bill of information had been accepted and the use of predicate conviction #2 (felon in possession of a firearm) had been thrown out.  Therefore, he cannot establish that he was prejudiced by counsel's purported failure in those respects.

As to petitioner's final contention that his counsel was ineffective counsel for losing and failing to introduce into evidence letters concerning petitioner's employment and character, that contention has no merit for the following reasons.

Petitioner alleges:

The Assistant District Attorney in the case tried to use old convictions from over 10-12 years past to demonstrate to the jury that the defendant was a career criminal. The defendant had started a small business *(All-in-1 Home Improvements)*. Some of the defendant's customers wrote letters to the courts and were willing to testify on the defendant's behalf. The defendant gave copies of said letters to his attorney prior to trial, but defense counsel lost the copies. The defendant brought more copies the next day for the attorney to show the court and the jury, but defense

---

[58] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.

[59] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.  Because "the Louisiana Supreme Court did not clearly and expressly state that any part of its judgment rested on a procedural bar," the state does not allege that this claim is procedurally barred from federal review. Rec. Doc. 9, p. 8 n.2.

counsel never even mentioned them in court. Furthermore, the defense counsel did not object to the state using other crimes evidence to paint a picture for the jury that the defendant was a career criminal and had no place on the streets. … The charges the state was mentioning to the jury were over 11-12 years old, from when the defendant was very young. Had defense counsel used the letters or called these character witnesses it would have made a meaningful impact on the jury and judge and there is a 'reasonable probability' that it would have changed the outcome of the trial or, at the very least, influenced the judge to use a downward departure during sentencing. These letters from customers show that the defendant was working and trustworthy and acting as a functioning member of society and that he was not the career criminal that the state made him out to be in front of the jury.[60]

As to counsel's failure to introduce such evidence *at trial*, petitioner's argument should be rejected because the such character evidence had little or no relevance to the pertinent issue being tried, i.e. whether petitioner committed the instant crime. His experience as a business owner and his reputation among his clients were of no moment on that issue, given that the evidence clearly showed that, despite those laudable attributes, he got drunk and tried to burglarize the Cardwells' property on this occasion. Even if he was now an otherwise upstanding citizen who had given up his prior life of crime, that was simply immaterial to whether he was guilty of the charged offense. It is clear that "counsel will not be deemed to be ineffective for failing to offer inadmissible or irrelevant evidence." Blakeney v. Lee, No. 3:05 CV-10-V, 2007 WL 1341456, at *44 (W.D.N.C. May 3, 2007), aff'd sub nom. Blakeney v. Branker, 314 F. App'x 572 (4th Cir. 2009); accord Massey v. Cain, Civ. Action No. 14-2952, 2016 WL 5376239, at *10 (E.D. La. June 21, 2016), adopted, 2016 WL 5362992 (E.D. La. Sept. 26, 2016); Smith v. Cain, Civ. Action No. 07-1504, 2007 WL 2461663, at *10 (E.D. La. Aug. 23, 2007).

On the other hand, as to counsel's failure to introduce such evidence *at sentencing*, the evidence would have been of some relevance in that proceeding. Nevertheless, as a general matter,

---

[60] Rec. Doc. 3, pp. 45-46.

a "[p]etitioner's argument that had counsel argued for a downward departure, such a sentence would have been granted is speculative and conclusory and as such, does not warrant relief." Suarez v. Secretary, Department of Corrections, No. 6:10-cv-1179, 2013 WL 1464344, at *8 (M.D. Fla. Apr. 10, 2013); see Yowell v. Thaler, 545 F. App'x 311, 314 (5th Cir. 2013) ("We have consistently held that conclusional and speculative allegations of ineffective assistance are not grounds for habeas relief.").

Moreover, such speculation is particularly unfounded here. On direct appeal, the Louisiana First Circuit Court of Appeal rejected petitioner's contention that his sentence was excessive, holding:

> The Eighth Amendment to the United States Constitution and Article I, Section 20 of the Louisiana Constitution prohibit the imposition of excessive punishment. Even a sentence that falls within statutory limits is unconstitutionally excessive when it imposes punishment grossly disproportionate to the severity of the offense or constitutes nothing more than needless infliction of pain and suffering. State v. Smith, 01-2574 (La. 1/14/03), 839 So.2d 1, 4; State v. Sepulvado, 367 So.2d 762, 767 (La. 1979). Sentences must be individualized according to the offender and the offense, taking into consideration certain factors enumerated in Louisiana Code of Criminal Procedure article 894.1,[FN 7] as well as the defendant's personal history, his prior criminal record, the seriousness of the offense, the likelihood the he will commit another crime, and his potential for rehabilitation through correctional services other than confinement. See State v. Jones, 398 So.2d 1049, 1051-52 (La. 1981). A trial judge has broad discretion in imposing a sentence within statutory limits, and such sentence will not be set aside absent a manifest abuse of discretion. State v. Taves, 03-0518 (La. 12/3/03), 861 So.2d 144, 147.

>> [FN 7] While the trial court need not recite the entire checklist of Article 894.1, the record must reflect that it adequately considered the factors State v. Brown, 02-2231 (La. App. 1 Cir. 5/9/03), 849 So.2d 566, 569. However, the goal of Article 894.1 is the articulation of the factual basis for a sentence, not rigid or mechanical compliance with its provisions. State v. Lanclos, 419 So.2d 475, 478 (La. 1982). Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with Article 894.1. Id. at 478.

A conviction for attempted simple burglary carries a maximum sentence of six years imprisonment at hard labor pursuant to Louisiana Revised Statutes 14:27(D)(3) and 14:62(B). Under the Habitual Offender Law, the penalty for a fourth-felony offender is imprisonment "for a determinate term not less than the longest prescribed for a first conviction but in no event less than twenty years and not more than his natural life." La. R.S. 15:529.1(A)(4)(a). Pursuant to this statute, the defendant faced a sentencing range of twenty years to life. Thus, the trial court in this case imposed the mandatory minimum sentence.

Courts are charged with imposing a statutorily mandated sentence unless it is unconstitutional. State v. Dorthey, 623 So.2d 1276, 1278 (La. 1993). The Louisiana Supreme Court has recognized that although "it is apparent that the Legislature's determination of an appropriate minimum sentence should be afforded great deference by the judiciary," it is well-settled that "courts have the power to declare a sentence excessive under Article I, Section 20 of the Louisiana Constitution, although it falls within the statutory limits provided by the Legislature." State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, 676. Nonetheless, it is presumed that a mandatory minimum sentence under the Habitual Offender Law is constitutional. Id. at 675.

In State v. Dorthey, 623 So.2d 1276, 1280-81 (La. 1993), the Louisiana Supreme Court recognized that if a trial judge determines that the punishment mandated by the Habitual Offender Law makes no measurable contribution to acceptable goals of punishment, or that the sentence amounts to nothing more than the purposeful imposition of pain and suffering, and is grossly out of proportion to the severity of the crime, he is duty bound to reduce the sentence to one that would not be constitutionally excessive. However, the court so recognized only after, and in light of, express recognition that the determination and definition of acts that are punishable as crimes is purely a legislative function. Dorthey, 623 So.2d at 1278. It is the Legislature's prerogative to determine the length of the sentence imposed for crimes classified as felonies. Id. Moreover, courts are charged with applying these punishments unless they are found to be unconstitutional. Id.

In State v. Johnson, 97-1906 (La. 3/4/98), 709 So.2d 672, the Louisiana Supreme Court re-examined the issue of when a downward departure from a mandatory minimum sentence of the Habitual Offender Law is permitted. The court held that to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, meaning that because of unusual circumstances he is a victim of the Legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Johnson, 709 So.2d at 676. The court cautioned that such downward departures should occur only in rare instances. Id. at 677.

At the original sentencing hearing, the trial court noted its consideration of the facts, the defendant's use of poor judgment, and the traumatic effect that the offense had on the victims. The defendant has not presented any particular facts or special circumstances that would support a deviation from the habitual offender

mandatory minimum sentence. In fact, the record establishes that up to this point in his life, the defendant is a habitual criminal offender against whom the enhanced sentencing statutes are designed to protect. Based on the record before us, we find that the defendant has failed to show that he is exceptional or that the minimum mandatory sentence is not meaningfully tailored to his culpability, the gravity of the offense, and the circumstances of the case. Thus, a downward departure from the mandatory minimum sentence of twenty years imprisonment is not warranted in this case. The sentence imposed is not excessive ....[61]

The Louisiana Supreme Court then denied petitioner's related writ application without assigning additional reasons.[62]

As noted by the Court of Appeal, petitioner had *already* received the mandatory *minimum* sentence for his crime, and his speculation that evidence of his business reputation would suffice to warrant an even lower sentence is unfounded. On the contrary, the Louisiana Supreme Court has held:

> The legislature has the sole authority under the Louisiana Constitution to define conduct as criminal and provide penalties for such conduct. La. Const. art. III, § 1. Given the legislature's plenary authority, departures from mandatory minimum sentences by their nature must be *exceedingly rare*, and *the class of exceptional offenders* for whom presumptively-constitutional mandatory minimum terms of imprisonment are nevertheless excessive as applied to them, *exceedingly narrow*. State v. Johnson, 97-1906, p. 9 (La. 3/4/98), 709 So.2d 672, 676-77.

State v. Noble, 114 So. 3d 500, 501 (La. 2013) (emphasis added).

In light of those limitations, it is not reasonably probable that a downward departure would have been granted in petitioner's case if only his counsel had presented the evidence concerning petitioner's experience as a business owner and his reputation among his clients. Accordingly, this Court has no basis for concluding that counsel's failure to present that evidence prejudiced

---

[61] State v. Lawrence, No. 2014 KA 1448, 2015 WL 996869 (La. App. 1st Cir. Mar. 6, 2015); State Rec., Vol. 4 of 6.
[62] State ex rel. Lawrence v. State, 220 So. 3d 739 (La. 2017); State Rec., Vol. 4 of 6.

petitioner – or for finding that the state court acted unreasonably in denying petitioner's claim that his counsel was ineffective for failing to present that evidence.

### 5.  Failure to File Motions

Petitioner next alleges that counsel was ineffective for failing to file necessary motions.  In the state post-conviction proceedings, the state district court denied that claim, holding:

> Petitioner alleges in [this claim] that his attorney was ineffective because he "failed to file:  1) Bill of Particulars, 2) Motion for Discovery and Inspection, 3) Bill of Information, 4) Application for Reduction of Bail, 5) Motion to Suppress Evidence, Prejudicial Photos and Prior Crimes."  As to the Bill of Particulars, the record shows that the prosecution provided "open file" discovery to the defense, which satisfied the requirement that the prosecution furnish a bill of particulars. _State v. Ohrberg_, 448 So. 2d 1316, 1318-19 (La. App. 1 Cir. 1984).  Therefore, there was no need for counsel to move for a bill of particulars, and this portion of the claim is without merit.  Regarding the Motion for Discovery and Inspection, the record supports that petitioner's attorney did move for discovery and inspection, and therefore this portion of the claim is denied.  As to the Bill of Information, the petitioner's attorney did not have the authority to file a bill of information, this authority is reserved to the district attorney.  Accordingly, petitioner has failed to demonstrate either deficient performance or prejudice on this portion of the claim and it is denied.
>
> Petitioner has failed to demonstrate that there is a reasonable probability that the result of the trial would have been different had the district court set bail in a lower amount, therefore petitioner's allegation that his attorney was ineffective for failing to file an Application for Reduction of Bail is without merit.  As to petitioner's assertion that his counsel was ineffective for failing to file a Motion to Suppress Evidence, Prejudicial Photos and Prior Crimes, petitioner has failed to demonstrate that there is a reasonable probability that the trial court would have granted these motions in favor of the petitioner and that this would have changed the result of the trial.  Accordingly, this portion of the claim is without merit and is denied.[63]

---

[63] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, pp. 4-5.

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[64] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[65]

This claim warrants little consideration. As accurately explained by the state district court, a motion for discovery and inspection was in fact filed, a bill of particulars was unnecessary, and only the prosecutor may file a bill of information. Further, petitioner cannot show he was prejudiced by counsel's failure to file a motion for reduction in bail, because petitioner has not explained how the result of the proceeding would have been different if only he had been granted a bail reduction. Lastly, with respect to the motion to suppress evidence:

> Where defense counsel's failure to litigate a Fourth Amendment claim competently is the principal allegation of ineffectiveness, the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice.

Kimmelman v. Morrison, 477 U.S. 365, 375 (1986). Petitioner has not made that showing.

## 6. Appellate Counsel

Lastly, petitioner alleges that his appellate counsel was ineffective in that, without consulting with him, she filed a brief that was "almost meaningless" and which failed to raise "meaningful sentencing errors."[66] In the state post-conviction proceedings, the state district court denied that claim, holding:

> Petitioner asserts his appellate counsel was ineffective for failing to raise "meaningful sentencing errors that are only cognizable on direct appeal." In order to prevail on a claim of ineffective assistance of counsel on appeal, a petitioner must show "that appellate counsel ignored issues clearly stronger than those

---

[64] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.

[65] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

[66] Rec. Doc. 3, p. 47.

presented," and there is a reasonable probability that petitioner would have prevailed on the omitted claim on appeal. _State v. Hebert_, 15-0965 (La. 10/02/15), _182 So. 3d 23, 23_. The "arguments" that petitioner asserts appellate counsel should have raised on appeal are found by this Court to be without merit for the reasons addressed in [the claims] above. "When the substantive issue that an attorney has not raised has no merit, then the claim the attorney was ineffective for failing to raise the issue has no merit." _State v. Williams_, 613 So. 2d 252, 256-257 (La. App. 1 Cir. 1992).[67]

The Louisiana First Circuit Court of Appeal then denied petitioner's related writ application without assigning reasons.[68] The Louisiana Supreme Court thereafter likewise denied relief, stating: "Applicant fails to satisfy his post-conviction burden of proof. La.C.Cr.P. art. 930.2."[69]

Obviously, appellate counsel "is not obligated to urge on appeal every nonfrivolous issue that might be raised (not even those requested by defendant)." West v. Johnson, 92 F.3d 1385, 1396 (5th Cir. 1996). Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Jones v. Barnes, 463 U.S. 745, 751-52 (1983). Far from evidencing ineffectiveness, an appellant counsel's restraint often benefits his client because "a brief that raises every colorable issue runs the risk of burying good arguments ... in a verbal mound made up of strong and weak contentions." Id. at 753. As a result, when assessing a claim alleging ineffective assistance of appellate counsel, the court looks to whether the issues ignored by appellate counsel were "clearly stronger" than the issues actually presented on appeal. See, e.g., Diaz v. Quarterman, 228 F. App'x 417, 427 (5th Cir. 2007); accord Smith v. Robbins, 528 U.S. 259, 288 (2000).

---

[67] State Rec., Vol. 5 of 6, Reasons for Denying Post-Conviction Relief, pp. 2-3.
[68] State v. Lawrence, No. 2018 KW 1256, 2018 WL 6819419 (La. App. 1st Cir. Dec. 26, 2018); State Rec., Vol. 5 of 6.
[69] State v. Lawrence, 280 So. 3d 132 (La. 2019); State Rec., Vol. 5 of 6.

In the instant case, appellate counsel raised a single claim, namely that there was insufficient evidence to support the conviction. Although the state courts ultimately denied that claim, it was not frivolous – and, more importantly, it was stronger than the claims petitioner now suggests should have been brought concerning his sentence. For the reasons already explained in detail in this opinion, petitioner's adjudication as a "fourth or subsequent offender" would still have been valid even if he had prevailed on those sentencing arguments. Therefore, appellate counsel was not ineffective for failing to raise those arguments.

In summary, to be entitled to relief, petitioner must demonstrate that the state court decision rejecting his ineffective assistance of counsel claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States. He has not made that showing in the instant case with respect to any aspect of his claim. Accordingly, utilizing the AEDPA's doubly deferential standards of review applicable to such claims, this Court should likewise deny relief.

## **RECOMMENDATION**

It is therefore **RECOMMENDED** that the federal application for habeas corpus relief filed by James Michael Lawrence be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will

result from a failure to object.  28 U.S.C. § 636(b)(1);  Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).[70]

New Orleans, Louisiana,  this ____4th____ day of August, 2020.


**JANIS VAN MEERVELD**
**UNITED STATES MAGISTRATE JUDGE**

---

[70] Douglass referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend that period to fourteen days.